JOHN LOUIS STURM v. NORTHWEST MILLS COMPANY.[1]

May 26, 1911.

Nos. 17,038—(133).

**Question of negligence for the jury.**
In this a personal injury action, it is *held* that the question of defendant's negligence was for the jury, and that the evidence sustains the verdict.

**Rulings on admission of evidence.**
There were no errors in the rulings on the admission of evidence, or in the charge.

**Excessive damages.**
The damages were not excessive.

Action in the district court for Winona county to recover $10,225 for personal injuries. The answer admitted the accident but denied negligence on defendant's part. The case was tried before Snow, J., and a jury which returned a verdict in favor of plaintiff for $4,225. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Morton Barrows,* for appellant.
*Webber & Lees,* for respondent.

[1]Reported in 131 N. W. 472.

Bunn, J.

Defendant operates an elevator and mill at Winona for the manufacture of dairy and stock-feeding stuffs. Plaintiff on December 24, 1909, and for some months before that, was a servant in defendant's employ; his duties being to run the heating plant at night and to do any work about the premises that he was called on to do by other employees. The mill and elevator were on opposite sides of a railroad track, upon which defendant received cars for loading and unloading. The space between the mill and elevator was about fifty feet wide, and inclosed, except for openings on each side to permit the passage of cars.

These openings were about twelve feet wide, and were equipped with metallic curtains that could be raised and lowered when occasion required. The curtain at the west side, the one involved here, was suspended at the top of the opening from an iron roller, on which it was wound when raised, and unwound when lowered. It was made of metal strips about one and one-half inches wide, and when unrolled reached from the top of the opening to the floor of the car shed. At one end of the roller was a sprocket wheel, over which an endless chain ran to a pulley near the floor. There was a mechanical device or gear in the roller designed to prevent the curtain from dropping of its own weight. On either side of the door was a runway or slide an inch wide and one and one-half inches deep, constructed of metal strips, and extending from the top of the curtain to the floor. On the bottom of the curtain, and attached to it, was an iron bar, designed to stiffen the curtain and hold it in place. The ends of this iron bar were arranged to slide in the runways, as were the ends of the curtain, though the latter did not enter the runways to the depth that the iron bars did. If the bars came out of the runways, the curtain would also; but, as long as the bars remained in the slides, no portion of the curtain could, when it was lowered, or if it fell, strike the floor outside of the line between the slides. The curtain was lowered and raised by means of the endless chain.

On the night of December 24, 1909, the night watchman called upon plaintiff to help him pull the curtain down, as it was sticking

in the slides. It was a dark night, snowing, with the wind blowing through the opening into the car shed. Plaintiff stood about eight inches inside the door. He noticed that the curtain was about three feet from the top of the doorway. Owing to the darkness, he could not see whether the rods were in the slides or not, or whether the curtain moved down as he pulled the chain. He had never operated the curtain before. As he was pulling down on the chain, and the watchman was pulling up on the other side, suddenly the curtain fell and struck plaintiff, throwing him down, and inflicting the injuries for which he seeks to recover damages in this action.

The complaint charged as negligence that the iron bar and the curtain itself had become bent and warped, so that one or both of the ends of the bar and the edges of the curtain had slipped out of the slides or runways, and that because of this condition the curtain could not be held in place when it was lowered, and was likely to slip and drop upon those engaged in lowering it; that this condition was or should have been known to defendant, and was the cause of the curtain dropping at the time of the accident.

The court submitted the case to the jury, after denying defendant's motion for a directed verdict. The verdict was for plaintiff; damages, $4,225. Defendant's motion for judgment or for a new trial was denied, and it appealed from the order.

Defendant earnestly insists that there was no evidence that it was negligent. It is not very clear what caused the curtain to drop. Immediately after the accident the curtain was found with its lower portion on the floor about two feet inside the doorway. The iron rod was out of the runways, and lay on the floor with the curtain. The next morning the curtain was raised, and nothing was found out of place or working order, except that the iron rod and lower part of the curtain were bent, and were out of the guides. In view of where plaintiff was standing when he was struck, and the position of the curtain and rod after the accident, it is probable, at least, that the rod left the guides before plaintiff was hit; and we think the evidence supports a finding that the rod's leaving the guides was due to its being bent. The weight of the curtain as it was un-

rolled came on the rod, and, with the assistance of the wind, forced it out of the guides and caused it to fall. Had the ends of the rod not left the guides, though the curtain might still have fallen, plaintiff would not have been struck. Had the rod been straight, it could hardly have left the guides. It would seem to follow that the cause of the accident was the bent or kinked condition of the rod.

The inquiry then is: Did defendant have knowledge of this defect, and did it have reason to anticipate that it might cause injury to an employee engaged in operating the curtain? The curtains had never worked well. They would stick. In spite of the arrangement designed to prevent the curtain falling, it had been found necessary to push a stick through the sprocket chain to accomplish this purpose. Some two weeks before the accident, the brake of a car had caught the rod and bent it, so that it came out of the guides. Defendant's superintendent was notified of this, and with one of the men and a car puller straightened the rod and got it back in the guides, so that the curtain could be raised enough to let a car through, though it stuck about three feet from the top. The rod was not taken from the curtain, and no other effort was made, then or afterwards, to straighten it. Even the superintendent says that it was still some bent and did not work well. It does not appear that the curtain was lowered after this time and before the time of the accident.

The jury was fully warranted, in our opinion, in finding all of the facts above recited to be true, and justified from these facts in deciding that defendant knew of the defect in the rod that caused the accident, and that it ought to have anticipated that this defect might cause the rod to leave the guides, and that the rod and curtain would then be apt to fall, so as to injure the servant who was operating it. We conclude, therefore, that the question of defendant's negligence was properly left to the jury, and that the evidence sustains the verdict.

It is claimed that the defect pleaded in the complaint as being the cause of the accident, and as constituting the negligence of defendant, is not the defect proved, and therefore that there is a fatal-variance between the pleading and the proof. The complaint

is unnecessarily specific in pointing out the precise defect; but we do not think there was a material variance.

There was no error in the court's refusal to strike out an answer of a witness as not responsive. The answer was fairly responsive, and was not prejudicial. There was no error in permitting a non-expert witness to testify that plaintiff appeared to be suffering pain.

Defendant assigns as error the language used in the charge as to the master's duty to his servants in reference to furnishing safe appliances and a safe place in which to work. While not accurate, the instruction given could hardly mislead the jury, and has been upheld by this court in a number of cases.

The claim that the court failed to instruct as to the burden of proof is not sustained by the facts.

The verdict is not so large as to warrant this court in setting it aside or reducing it.

Order affirmed.